UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
00-CV-1024(JMR/RLE)

| | | |
|---|---|---|
| James T. Muse<br><br>v.<br><br>Mid-State Power and Polaris Industries Inc.<br><br>and<br><br>Mid-State Power and Polaris Industries Inc.<br><br>v.<br><br>Transport Corporation of America, Inc. | ) | ORDER |

This matter is before the Court on third-party defendant, Transport Corporation of America, Inc.'s ("TCA") motion for summary judgment. TCA seeks relief from any liability for contribution or indemnification arising from workplace injuries sustained by plaintiff, James T. Muse ("Muse"). TCA claims Iowa law governs this dispute, while defendants and third-party plaintiffs, Polaris Industries Inc. ("Polaris") and Mid-State Power ("Mid-State") claim Minnesota law controls.

This matter was heard on September 28, 2001. The Court found Minnesota law controlling, and requested supplemental briefing on the issue of corporate successor liability. The Court, having reviewed the facts and the law, denies TCA's motion for summary judgment.

FILED
RICHARD D. SLETTEN, CLERK
JAN 30 2002
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

## I. Background

TCA is an over-land shipping company with its principal place of business in Eagan, Minnesota. Polaris manufactures recreational vehicles, and has its principal place of business in Roseau, Minnesota. Prior to July, 1998, North Star Transport provided shipping services to Polaris pursuant to a Motor Contract Carrier Transportation Agreement ("Carrier Agreement"). This agreement included the following language:

> Carrier hereby assumes and agrees to indemnify shipper against all liability for any and all claims for loss and damage to any property and/or personal injury arising out of, or in any way connect with, the acts or omissions of carrier, carrier's employees, servants and/or agents while performing the carrier's obligations hereunder.

In July, 1998, TCA acquired North Star through a stock purchase. TCA thereafter fulfilled North Star's shipping contracts -- including the contract with Polaris. Although TCA shipped Polaris's products, Polaris was assured that the shipments were performed under the Carrier Agreement.

On February 15, 1999, Mr. Muse, a TCA truck driver, was injured while unloading Polaris products at Mid-State's distributorship in Redmond, Oregon. Muse sought and received workers' compensation benefits in Iowa through TCA's workers' compensation carrier, St. Paul Fire and Marine Insurance Company. Muse brought a separate negligence lawsuit against Polaris and Mid-State. Polaris and Mid-State filed a third-party complaint against TCA seeking indemnification.

Polaris claims TCA assumed the obligations contained in the Carrier Agreement when it purchased North Star and fulfilled its existing contracts. TCA argues that, because North Star continues to operate as a wholly-owned subsidiary of TCA, the indemnity provision is not applicable to TCA's shipment of Polaris products.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

B. Corporate Successor Liability

Minnesota follows the traditional approach to successor liability: when one corporation sells or otherwise transfers assets to another, the receiving corporation is not liable for the actions of the transferor corporation. See Niccum v. Hydra Tool Corp., 438 N.W.2d 96, 98 (Minn. 1989) (citing J.F. Anderson Lumber Co. v. Myers, 206 N.W.2d 365, 368 (1973)). When a corporation is sold through a stock transfer, however, the buyer assumes not only the assets of the corporation, but also its liabilities. See Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 536 (Minn. 1986). The Minnesota Supreme Court recognizes four exceptions to the general rule in asset transfer cases:

> 1. Where the purchaser expressly or impliedly agrees to assume such debts.
>
> 2. Where the transaction amounts to a consolidation or merger of the corporation ("de facto merger").
>
> 3. Where the purchasing corporation is merely a continuation of the selling corporation.
>
> 4. Where the transaction is entered into fraudulently in order to escape liabilities such as debts.[1]

See id.

---

[1]Mere continuation "refers principally to a reorganization of the original corporation under federal bankruptcy law or through state statutory devices," and is therefore inapplicable in the present case. Id. at 99. Similarly, neither party has implied that TCA purchased North Star to accomplish any nefarious purpose. Neither rationale provides a ground upon which to find corporate successor liability.

TCA denies it bears any successor liability for the Carrier Agreement between Polaris and North Star because it purchased only North Star stock, and did not transfer or acquire North Star assets. Polaris replies that TCA bears successor liability because TCA expressly and impliedly agreed to assume North Star's obligations under the Carrier Agreement or, in the alternative, that the stock purchase amounted to a de facto merger.

1. Express or Implied Agreement to Assume Debts

The first exception recognizes corporate successor liability when the merging company expressly or impliedly agrees to assume the second company's existing liabilities, debts, or obligations. Polaris argues that TCA expressly or impliedly agreed to assume the Carrier Agreement and thereby assumed successor liability. The stock purchase agreement, however, contains no express declaration assuming North Star's liabilities. Polaris argues that TCA's behavior implied its intention to continue the operation of the Carrier Agreement. The behavior of parties can demonstrate acceptance of the conditions of a contract. See Roberge v. Cambridge Co-op Creamery, 79 N.W. 142, 146 (1956).

Polaris claims Bob Meyers, TCA's president, told its representatives that the Muse lawsuit was TCA's responsibility because of the North Star contract indemnity provision. Polaris also offered deposition testimony by its employee, Paul Borgen, indicating that TCA never asked either Polaris or North Star to

change the Carrier Agreement.[2] Mr. Borgen further noted that Polaris understood from TCA's statements that the company intended to create a seamless transition in service. According to Mr. Borgen, TCA never informed him that the Carrier Agreement was no longer in effect. In response, TCA questions Mr. Borgen's credibility, because his deposition testimony noted a lack of personal knowledge as to whether the Carrier Agreement governed TCA's relationship with Polaris.

Polaris also claims an e-mail communication sent both internally and to Polaris by Jim Aronson Jr., TCA's director of logistics, stated that the Carrier Agreement governed Polaris's relationship, and thereby indicated TCA's assent. TCA denies that this statement is determinative, because Mr. Aronson did not know whether his information about the agreement was accurate, and because he lacked the authority to make the determination. Polaris counters that, even if he did not have actual authority to bind the company, his apparent authority was sufficient to imply consent.

In sum, the Court finds Polaris has offered sufficient evidence to create a triable question of fact regarding the existence of an implied agreement to adopt the Carrier Agreement, and thereby

---

[2]Mr. Borgen worked for Polaris as its traffic supervisor, logistics supervisor, and manufacturing engineer, and signed the Carrier Agreement on Polaris's behalf. Mr. Borgen is currently the corporate logistics manager for Polaris.

create successor liability. Summary judgment is therefore precluded.

2. De Facto Merger

The Minnesota Supreme Court also recognizes an equitable exception to the bar against successor liability in the case of a de facto merger, see Specialized Tours, Inc., 392 N.W.2d at 536. But while the Minnesota Court has recognized the exception, it has not precisely delineated its contours. Minnesota's Court of Appeals has, however, in a number of its unpublished opinions, adopted a multi-factor analysis:

> 1. Whether there is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets and general business operation.
>
> 2. Whether there is a continuity of shareholders which results from the purchasing corporation paying for the acquiring asset with shares of its own stock, this stock ultimately coming to be held by the shareholders of the corporation so that they become a constituent part of the purchasing corporation.
>
> 3. Whether the seller corporation ceases its ordinary business operation, liquidated, and dissolved as soon as legally and practically possible.
>
> 4. Whether the purchasing corporation assumed the obligation of the seller ordinarily necessary for the continuation of normal business operations of the seller corporation.

See State of Minnesota, by Bellaire Sanitation, Inc. v. Gopher Oil Co., 1995 Minn. App. LEXIS 1425, *6-9 (Minn. Ct. App. Nov. 21, 1995) (unpublished) (citing Sylvester Bros. Dev. Corp. v. Burlington Northern, 772 F. Supp. 443, 447-48 (D. Minn.

1979))(adopting applying the four step analysis); see also Fine v. Schwinn Cycling Fitness, Inc., 2000 Minn. App. LEXIS 1292 (Minn. Ct. App. Dec. 26, 2000) (unpublished) (explaining multi-factor de facto merger test); Costello v. Unipress Corp., 1996 Minn. App. LEXIS 291, *2 (Minn. Ct. App. March 12, 1996) (listing same four factors for consideration in a de facto merger claim); New York Life Ins. Co. v. Landmark Dev. Corp., 1993 Minn. App. LEXIS 522, *7-9 (Minn. Ct. App. May 11, 1993) (unpublished) (finding that a question of material fact exists when individual elements weigh in favor of each party); Minnesota Mining & Mfg. Co. v. Rynne, 661 F.2d 722, 724 (8th Cir. 1981); Soo Line R. Co. v. B.J. Carney & Co., 797 F. Supp. 1472, 1483 (D. Minn. 1992).

Given the Minnesota Supreme Court's recognition of the de facto merger exception, and the Court of Appeals' frequent recourse to the four-step analysis to apply this exception, this Court -- along with its colleague Judge Robert G. Renner - considers it likely the Minnesota Supreme Court would accept the de facto merger analytic. See, e.g., T.H.S. Northstar Assoc. v. W.R. Grace & Co., 840 F. Supp. 676, 678 (D. Minn. 1993) (applying the four-element test based on the Minnesota Supreme Court's adoption of the de facto merger exception).

When analyzing a de facto merger, no single factor is dispositive. To prove a de facto merger, however, a continuity of shareholders -- accomplished through a stock purchase -- is

required. Sylvester Bros., 772 F. Supp. at 448. North Star shareholders became TCA shareholders through the stock purchase agreement. Because this necessary element is satisfied, the Court further considers the de facto merger test.

a. Continuation of the Enterprise

A continuation of management, personnel, physical location, and assets and operations demonstrates a de facto merger. See T.H.S. Northstar Associates, 840 F. Supp. at 679 (assuming the obligations necessary to continue another's business indicates a de facto merger). It is undisputed that TCA represented to the public its intent to purchase North Star shares and to continue service to North Star's customers. The record presented, however, does not precisely outline the mechanics of the business conducted after the acquisition. The record shows TCA continued to use North Star's drivers; that it adopted North Star's customers as its own; and that North Star and TCA consolidated facilities. These facts raise a question of fact regarding the continuation of the North Star business following the merger.

b. Continuity of Shareholders

Absent a continuity of shareholders, the Court cannot find a de facto merger. T.H.S. Northstar Associates, 840 F. Supp. at 679. TCA purchased North Star by cash and stock; North Star's shareholders became TCA shareholders thereafter. The requisite continuity of shareholders is therefore satisfied.

c. <u>Seller Ceased Operations</u>

The third factor asks whether the seller continued to operate following the merger. There is a question as to the ongoing relationship between North Star and TCA. The record is silent as to whether TCA took over all or only a part of North Star's delivery customers, if TCA and North Star have an agreement governing TCA's performance of North Star's deliveries, or if both North Star and TCA performed services for Polaris's shipping contract.

d. <u>Purchasing Entity Assumes Obligations for Uninterrupted Business Operations</u>

Finally, the Court considers whether TCA performed North Star's existing operations and filled its commitments following the merger. TCA's business newsletter announced that the North Star stock purchase introduced it to new customers, including Polaris. TCA stated its wish that these relationships would grow in the future. The Court lacks sufficient facts with which to resolve this issue.

III. <u>Conclusion</u>

The evidence presented by the parties raises genuine questions regarding at least three of the four elements of the de facto merger test. Resolution of these questions depends on actual business conduct following the stock purchase. At this time, the record evidence neither proves nor precludes a finding that the de facto merger doctrine applies. There also remain unresolved fact

questions concerning the express or implied agreement to assume North Star's liabilities. Accordingly, summary judgment is denied.

IT IS SO ORDERED.

Dated: January 29, 2002

JAMES M. ROSENBAUM
United States Chief District Judge